**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICIA M. FOX,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 11-CV-14723

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and disability insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 7, 9.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 42.) Plaintiff's employment history includes working as a manager of a bowling center since 1984. (Tr. at 148.) Plaintiff filed the instant claim on March 18, 2009, alleging that she became unable to work on February 20, 2008. (Tr. at 125.) The claim was denied at the initial administrative stages. (Tr. at 91.) In denying Plaintiff's claims, the Commissioner considered "Adjustment Disorder" and "Malig. Neo.-Nervous System" as possible bases for disability. (*Id.*) On October 4, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Jerome B. Blum, who considered the application for benefits *de novo*. (Tr. at 11-27, 35-90.) In a decision dated November 18, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision. (Tr. at 7-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on August 26, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On October 26, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those

who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

5

national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had met the insured status requirements as of February 20, 2008, the date she became disabled, and that she had not engaged in substantial gainful activity since her alleged onset date of February 20, 2008. (Tr. at 18.) At step two, the ALJ found that from February 20, 2008, through April 7, 2009, Plaintiff's brain tumor with subsequent surgery/treatment and adjustment disorder with depressed mood were "severe" within the meaning of the second sequential step. (Tr. at 18-19.) The ALJ also found that from April 8, 2009, to the present, only Plaintiff's history of brain tumor with subsequent surgery/treatment was severe. (Tr. at 19.) At step three, the ALJ found that from February 20, 2008, through April 7, 2009, the period during which Plaintiff was disabled, the severity of her brain tumor with surgery/treatment and her adjustment disorder with depressed mood met the criteria of Listing 12.02(A) and (B). (Tr. at 19.) The ALJ therefore found that Plaintiff was under a disability from February 20, 2008, through April 7, 2009. (Tr. at 20.) However, the ALJ found that medical improvement occurred as of April 8, 2009, and that beginning on April 8, 2009, there was no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21.) At step four, the ALJ found that as of April 8, 2009, Plaintiff was able to perform her past relevant work as a manager at a recreational facility. (Tr. at 23-24.) Alternatively, at step five, the ALJ found that as of April 8, 2009, Plaintiff retained the residual functional capacity to perform a full range of light work. (Tr. at 21-23.) Therefore, the ALJ found that Plaintiff was disabled beginning on February 20, 2008, and ending on April 8, 2009. (Tr. at 24.)

### E.  Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff worked full-time as a manager of a bowling center that she and her husband owned until she was diagnosed with a brain tumor. (Tr. at 43-44.) The benign tumor (sphenoid meningioma) was surgically removed in February 2008. Due to visual loss and increased headaches from swelling on her brain, a shunt was inserted to drain the cerebrospinal fluid. (Tr. at 45-46, 65, 181, 188-93, 198-346.) Plaintiff's neurological status after her surgeries was "stable." (Tr. at 296, 301.)

On March 29, 2010, Plaintiff was examined by Ghaus Malik, M.D., who indicated that an MRI of Plaintiff's brain would be performed to "rule out any recurrence of tumor." (Tr. at 181.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on May 18, 2009, by Jenny Farley. (Tr. at 347-54.) The assessment found that Plaintiff was able to occasionally lift 20 pounds, frequently lift 10 pounds, stand and sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push and pull. (Tr. at 348.) There were no postural, manipulative, visual, communicative, or environmental limitations established except that Plaintiff should avoid even moderate exposure to hazards. (Tr. at 349-51.) The assessment found Plaintiff's limitations regarding lack of stamina and fatigue to be credible and noted that there was no medical source statement on file. (Tr. at 352-53.)

Plaintiff was examined by a Michigan Disability Determination Service Psychologist, Patricia Madej, Ph.D., on June 10, 2009. (Tr. at 355-58.) Dr. Madej noted that Plaintiff said she had been off work for one year and had "started feeling better" in February. (Tr. at 355.) Plaintiff also told the doctor that she "was told [she] should apply for Social Security for the time [she] was off" and that she "didn't know [she] had mental health problems." (*Id*.) Plaintiff also reported that "she and her husband have owned a bar/bowling alley for 25 years" and that she "spends 30 to 40 hours per week at the business." (*Id.*) Dr. Madej noted that Plaintiff's "speech and thought processes were well organized and goal directed" with "[n]o evidence of word retrieval or word

naming problems[.]" (Tr. at 356.) Dr. Madej diagnosed Adjustment Disorder with Depressed Mood and assessed a GAF score of 61-65 and a good prognosis with supportive therapy. (Tr. at 358.) Dr. Madej opined that Plaintiff was "not able to manage her finances independently." (*Id.*)

A Mental RFC Assessment was completed on June 21, 2009, by Leonard Balunas, Ph.D. (Tr. at 359-61.) The assessment concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions but was not significantly limited in her ability to understand and remember very short and simple instructions, nor in her ability to remember locations and work-like procedures. (Tr. at 359.) Plaintiff was found to be moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods but was otherwise not significantly limited in sustained concentration and persistence. (Tr. at 359-60.) Plaintiff was not significantly limited in any areas of social interaction or adaptation except that she was found to be moderately limited in the ability to respond appropriately to changes in the work setting. (Tr. at 360.) The assessment concluded that Plaintiff was "able to perform unskilled work involving 1 and 2 step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting." (Tr. at 361.)

A Psychiatric Review Technique completed by Dr. Balunas on June 21, 2009, diagnosed Plaintiff with affective disorders, i.e., adjustment disorder with depressed mood. (Tr. at 363, 366.) Plaintiff was found to be mildly limited in activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. (Tr. at 373.) There were no "C" criteria established. (Tr. at 374.)

On March 10, 2010, Dr. Malik wrote to Dr. Carion and indicated that Plaintiff could not "engage in full time work activities at this time" and that she had "difficulty with short term memory loss per her husband." (Tr. at 380, 387.) Dr. Malik also stated that Plaintiff did not have "any new neurological symptoms at this time" and that her headaches were "fairly well-controlled." (*Id.*)

8

An MRI of Plaintiff's brain taken on April 6, 2010, showed "[n]o significant interval change" from the postsurgical changes noted. (Tr. at 382.)

On July 3, 2010, Gerald Winkler, M.D., wrote ALJ Blum a letter indicating that he reviewed Plaintiff's records and concluded:

> The last record entry that strongly suggested the meeting of Listing 12.02 is that of May 27, 2008. The earliest record that clearly indicates that the claimant was not [sic] longer at listing level is that of April 8, 2009. The intervening record entries lack sufficient detail to enable me to define more precisely the date upon which the claimant emerged from listing level.

(Tr. at 379.) Dr. Winkler noted that "at no time does the record indicate that either Dr. Malik or his resident performed an evaluation of the claimant's memory" and that the "opinion in letter is based upon representations made by the claimant's husband" and that the "opinion is inconsistent with the daily activity reported by the claimant to Dr. Madej." (*Id.*)

In her daily activity report, Plaintiff indicated that she makes her bed, does laundry, works for a "few hours" a day, makes dinner sometimes, watches television, and visits with family members on a daily basis. (Tr. at 154.) Plaintiff further indicated that she has no problem with personal care and does not need reminders to do so but does need to "use a loading device for all [her] meds" in order to remember to take her medications. (Tr. at 155-56.) Plaintiff also indicated that she makes sandwiches and dinner around three to five times a week and for about two hours at a time. (Tr. at 156.) Plaintiff stated that she is also able to do laundry, ironing, light dusting and kitchen clean-up almost everyday. (*Id.*) Plaintiff reported that she is able to walk a mile at a time, drive a car, that she can go out alone, shop in stores for a "couple hours" and can handle money matters, although she is "slower" and "feel[]s more comfortable with someone." (Tr. at 157, 159.) Plaintiff described her main hobbies as walking and watching T.V., and also stated that she attends church every Sunday and has dinner with friends or family a "couple times a week[.]" (Tr. at 158.) Plaintiff also stated that she does not remember oral instructions well because of short term memory issues. (Tr. at 159.)

9

Plaintiff testified at the administrative hearing that, during 2008, after the initial and follow-up surgeries, she felt "horrible" and was unable to do any driving or working. (Tr. at 46.) Plaintiff stated that she resumed driving one year later, i.e., February 2009. (Tr. at 47.) Plaintiff testified that beginning in 2009 she was able to drive and go to the bowling center, but that she gets lost when she drives to unfamiliar or faraway places or large cities, such as Detroit. (Tr. at 47-49.) Plaintiff also stated that she has trouble with peripheral vision but that does not prevent her from driving. (Tr. at 49-50.) Plaintiff added that she also forgets to turn the oven off until she hears the oven beep. (Tr. at 51.) Plaintiff stated that her memory problems do not appear to be getting worse or better. (Tr. at 53.) Plaintiff testified that she goes to the bowling center everyday, but when large crowds gather there, she becomes uncomfortable and wants to go home. (Tr. at 53-54.) While at the bowling center, she runs the Keno tickets, serves drinks, rents shoes, turns the bowling alley on and sets the pins, although she no longer does the book work or takes inventory. (Tr. at 54-56.) Plaintiff noted that before her illness, she worked 50 to 60 hours per week, but that since her surgery she only works around one to two hours each day, usually to cover the lunch hour. (Tr. at 57, 61.) Plaintiff clarified that she and her husband own the business equally and that he put her back on the payroll for health insurance purposes. (Tr. at 63-64.) Plaintiff also stated that she socializes with girlfriends, her parents, and her family. (Tr. at 64.) Plaintiff also indicated that she is active in her church by attending every Sunday and helping out whenever they need things done. (Tr. at 66.)

Plaintiff's husband, Frederick Fox, testified that Plaintiff has been paid around $100 per week since her surgery and that her job duties include greeting customers and running the Keno program. (Tr. at 74-75.) Mr. Fox added that before Plaintiff became ill, she did quite a bit more, including the bookkeeping. (Tr. at 75-76.) Mr. Fox stated that his salary is "the same as my wife's." (Tr. at 78.) However, when the ALJ indicated that was hard to believe, Mr. Fox stated that "it might be more than that." (*Id.*) Mr. Fox also stated that he and Plaintiff's bills are paid from the profits of the business and that everything is jointly held. (*Id.*) When asked to give an example of

10

his wife's memory issues, Mr. Fox recalled that Plaintiff scratched off a whole book of instant lottery tickets that were in "her pile of responsibilities" and, when asked about it, Plaintiff said she thought they were for her. (Tr. at 79.) Mr. Fox also indicated that Plaintiff is unable to work without constantly referring back to her list of duties. (Tr. at 80-81.)

The ALJ asked the Vocational Expert ("VE") how Plaintiff's past work as a manager at a recreational facility would be categorized and the VE responded that it would be considered skilled work with light physical demand. (Tr. at 85.) The VE further testified that the bookkeeping aspects of her job would be considered clerical and the waitress portion of her job would be unskilled, light. (*Id.*) As to unskilled jobs, the VE testified there are 50,000 light cashier jobs and 30,000 sales attendant jobs available in the Detroit area. (Tr. at 86.) However, the VE testified that if such a person had memory and concentration issues such as those described by Plaintiff during her testimony, the person could not perform either of those jobs.

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ found that Plaintiff was able to perform her past relevant work as a manager at a recreational facility. (Tr. at 23-24.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d

11

392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ determined that during the time Plaintiff qualified for benefits, she retained the residual functional capacity to perform a full range of light work. (Tr. at 21-23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.    Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 7.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's brief does not set forth specific arguments but discusses several matters characterized as error. One such alleged error was the ALJ's reference to Plaintiff, on June 18, 2009, having "told the examiner that she was spending 30 to 40 hours a week working" at the bowling alley she owns with her husband. (Tr. at 22; Doc. 7 at 4.) Plaintiff contends that this "statement regarding 30 to 40 hours per week was a reference to her work schedule prior to her February 2008 brain tumor" since, if it were true, Plaintiff would have engaged in substantial gainful activity. (Doc. 7 at 4.) Plaintiff states that she "told the examiner that she currently works a few hours per day at the lunch hour." (Doc. 7 at 4.) Plaintiff also criticizes Dr. Winkler for his reliance on this statement made by Plaintiff. (Doc. 7 at 6-8.) However, I suggest that the ALJ made no error. Plaintiff did tell Dr. Madej that she "started feeling better this year in February[,]" that "she and her husband have owned a bar/bowling alley for 25 years" and that she "spends 30 to 40 hours per week at the business." (Tr. at 355.) In addition, Plaintiff testified that before her illness, she worked 50 to 60 hours per week, not 30 to 40 hours. (Tr. at 57, 61.) I note that Plaintiff also testified that, at the time of the hearing, she was working approximately one to two hours a day, i.e., to cover the lunch hour. (*Id.*) However, the fact that Plaintiff's level of activity is reported in a conflicting manner does not mean that it was error for the ALJ to cite and rely on this evidence.

Plaintiff further criticizes the ALJ because although he found Plaintiff was credible, he also relied on vocational testimony from the VE when the VE conceded that if Plaintiff's testimony regarding her symptoms was fully credible, she would be unable to work. The ALJ's comment that Plaintiff was "credible" occurred before the VE was sworn or testified. The ALJ stated, "Well, counselor, you know, we have a very credible lady here, who underwent a terrible, terrible medical condition – life threatening." (Tr. at 66.) I suggest that this statement is not a formal credibility finding such as the one made in the ALJ's written opinion, but rather a conversational kindness given to Plaintiff and her counsel. I also note that finding Plaintiff credible is not inconsistent with finding that she is able to work. The RFC Assessment found Plaintiff to be credible, yet also found she was capable of light work. (347-54.)

13

I further suggest that the ALJ's summation of the record evidence and RFC analysis are supported by substantial evidence. Although Plaintiff did endure a difficult medical crisis, Plaintiff's neurological status after her surgeries was "stable." (Tr. at 296, 301.) In addition, an MRI of Plaintiff's brain taken on April 6, 2010, showed "[n]o significant interval change" from the post-surgical changes noted. (Tr. at 382.) There is simply no evidence of physical disability. As to mental limitations, the evidence is similarly lacking. Plaintiff herself stated that she "didn't know [she] had mental health problems." (Tr. at 355.) Dr. Madej found that Plaintiff's "speech and thought processes were well organized and goal directed" with "[n]o evidence of word retrieval or word naming problems[.]" (Tr. at 356.) Although Dr. Madej diagnosed Plaintiff with Adjustment Disorder with Depressed Mood, he also assessed a GAF score of 61-65 and gave Plaintiff a good prognosis. In addition, the mental RFC assessment and psychiatric review did not indicate disabling mental issues. (Tr. at 359-61, 363-74.)

Although Dr. Malik opined that Plaintiff cannot work, this conclusion is not entitled to any particular weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Turner*, 381 Fed. App'x at 492-93. In addition, as Dr. Carion noted, Dr. Mailk's conclusion was based only on a statement made by Plaintiff's husband, not on any medical findings. (Tr. at 379.) In addition, as Dr. Carion noted, the conclusion is inconsistent with the medical findings made by Dr. Malik that Plaintiff did not have "any new neurological symptoms at this time" and that her headaches were "fairly well-controlled," as well as with Plaintiff's reported daily activities. (Tr. at 379, 380, 387.)

Finally, I suggest that the ALJ's RFC findings were in harmony with the objective record medical evidence and Plaintiff's own statements that she makes her bed, does laundry, irons, performs light dusting and kitchen clean-up every day, works for a "few hours" a day, watches television, visits with family members on a daily basis, has no problem with personal care, makes sandwiches and dinner around three to five times a week and for about two hours at a time, is able to walk for "a mile" at a time, drive a car, attend church each Sunday, have dinner with friends or

family a couple times a week, go out alone, shop in stores for a "couple hours" and handle money. (Tr. at 154-59.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                     s/ Charles E. Binder
                                                     CHARLES E. BINDER
Dated: August 7, 2012                           United States Magistrate Judge

**<u>CERTIFICATION</u>**

   I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 7, 2012          By <u>s/Patricia T. Morris</u>
                     Law Clerk to Magistrate Judge Binder